**In re O'NEILL ENTERPRISES, INC., Bankrupt.**

**JACKSON PARK REALTY COMPANY, INC., et al., Appellants,**

v.

**Gray WILLIAMS, Trustee of O'Neill Enterprises, Inc., Appellee.**

**No. 76–1301.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 8, 1976.

Decided Jan. 18, 1977.

John K. Taggart, III, Charlottesville, Va. (Lloyd T. Smith, Jr., Tremblay & Smith, Charlottesville, Va., on brief), for appellants.

T. Munford Boyd, Charlottesville, Va. (Paxson, Smith, Boyd, Gilliam & Gouldman, Charlottesville, Va., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and WIDENER and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

This is an appeal by Jackson Park Realty Company, Inc. (hereinafter Jackson Park), Fidelity Bankers Life Insurance Company (hereinafter Fidelity) and Philadelphia Life Insurance Company (hereinafter Philadelphia) from an adverse ruling in a bankruptcy case. The district judge affirmed an order entered by the bankruptcy judge in the bankruptcy of O'Neill Enterprises, Inc. The case involves conflicting claims to the cash surrender value of a life insurance policy on the life of Mr. Frank A. O'Neill. It was held below that the trustee in bankruptcy for O'Neill Enterprises, Inc., was entitled to the fund. This appeal was filed pursuant to the Bankruptcy Act. Title 11

U.S.C. § 47 specifically gives jurisdiction to this court.

For purposes of securing financing for an office building it planned to construct at 2007 Earhart Street in the City of Charlottesville, Virginia, O'Neill Enterprises entered into a loan agreement in January 1967 with Philadelphia and Fidelity whereby the two insurance companies agreed to make a $750,000 loan to O'Neill Enterprises. Pursuant to that loan, two notes of $375,000 each were executed by O'Neill Enterprises on June 15, 1967. Security for these notes included a first deed of trust on the property at 2007 Earhart Street. As additional collateral security for the loan, the bankrupt O'Neill Enterprises was required to furnish an assignment of rents effective upon any default and six life insurance policies with a total face value of $1,000,000. The policy which is subject of this appeal is a $250,000 policy on the life of Frank A. O'Neill, the president and sole stockholder of O'Neill Enterprises.[1] This policy has a cash surrender value of $25,715.70.

In January of 1968, O'Neill Enterprises executed a subordinate deed of trust on the same property to secure a $100,000 loan by Jackson Park. The insurance policies which served the first lien debt were not involved in any way as security for this loan.

O'Neill Enterprises was adjudicated bankrupt on January 5, 1972, following a filing of an involuntary petition in bankruptcy. A receiver, and subsequently a trustee, took over the estate of the bankrupt. In the schedules filed by the trustee in behalf of the bankrupt, the six insurance policies were listed in Schedule B–3, Choses in Action, with the notation that the policies were believed to have no cash value.[2] This information was garnered from Mr. O'Neill. After institution of the bankrupt-

---

1. The other five insurance policies insured the lives of Mr. O'Neill's wife and children. The bankruptcy judge denied Jackson Park's claim to these policies on grounds that they had been issued to a party not having an insurable interest in the lives of the insured for the mere purpose of assignment which was in violation of Virginia law. Cash surrender value of these

five policies is approximately $3,000; however, their appeal was abandoned during appeal to the district court.

2. Title 11 U.S.C. § 25(a)(8) requires the bankrupt to file such a schedule of property and its money value.

cy proceeding the two insurance companies surrendered the six life insurance policies for their cash value. The policies had lapsed for nonpayment of premiums, but while their worth was unbeknown to the trustee or bankrupt, they were surrendered for their cash value of $28,789.66.[3] The trustee was not informed of this figure until October 4, 1972.

The trustee continued to hold and operate the Earhart Street building until June 9, 1972, when the property was ordered abandoned by the bankruptcy judge. An attempted sale failed to produce a bid which appeared sufficient to produce any equity for the estate and general creditors. Thus abandonment seemed proper. The order of abandonment referred only to the real estate at 2007 Earhart Street; it did not refer to the additional security (insurance policies). The trustee was not then aware of the intention to abandon anything but the real estate. Had the trustee known of the $28,789.66 credit to the first lien indebtedness, all indications are that there would not have been an abandonment and a bid for the property would have been accepted.[4]

Following abandonment, Philadelphia and Fidelity entered into an agreement with Jackson Park whereby Jackson Park would be allowed to foreclose under its second deed of trust, and if it were the successful bidder at the foreclosure sale, it would purchase the property subject to assumption of the first lien debt and certain other incidental expenses. In exchange for Jackson Park's promise to bring the first lien debt current and to assume the debt, Philadelphia and Fidelity agreed to transfer to Jackson Park, along with their interest in the rentals collected during the bankruptcy administration, their rights in the six insurance policies once they were satisfied that the first lien debt was otherwise adequately secured. Therefore, the two insurance companies, Philadelphia and Fidelity, refused to devote the insurance proceeds to reduction of the debt, but instead continued to hold the fund as further security for Jackson Park's performance of its obligation to them.

These negotiations and the final arrangement between the insurance companies and Jackson Park were carried out entirely without the knowledge or notice to the trustee or the bankruptcy court.

At a foreclosure sale on July 10, 1972, Jackson Park purchased the property, subject to the first deed of trust for $84,000.[5] Thereafter, on June 4, 1973, the trustee filed a petition in the bankruptcy court to recover the cash value of the insurance policies which were still held by Philadelphia and Fidelity. Following a hearing, the bankruptcy judge entered a decision in favor of the trustee, which was affirmed by the district court. We are in agreement.

█ The life insurance policies securing the first lien debt were initially intended by O'Neill Enterprises and the first lien noteholders to serve merely as secondary security "to be drawn upon only in the event of a deficiency after applying proceeds from the real estate." Philadelphia and Fidelity elected not to foreclose under their deed of trust, but instead allowed Jackson Park to foreclose under the second deed of trust and assume the first lien indebtedness. There was no deficiency and consequently no right in Philadelphia or Fidelity to proceed

3. Of this amount, $25,715.70 was the cash surrender value of the only policy in question in this appeal, i. e. the policy on the life of Mr. O'Neill.

4. By letter of July 13, 1972, sent to O'Neill Enterprises, it was disclosed that the insurance policies were worth something and Philadelphia and Fidelity intended to surrender the policies for their cash value and hold the proceeds as security for the debt. The trustee sent a reply letter within a week, indicating that the bankrupt had no interest in "maintaining" the

insurance policies, and the trustee inquired as to the "amount of the cash value of each such policy which has been paid on the indebtedness for which the policies constituted security."

By letter dated October 4, 1972, four months after abandonment of the Earhart property, Philadelphia responded to the trustee's inquiry and disclosed the cash surrender value of the six policies.

5. This was the approximate amount of indebtedness then due Jackson Park from the secondary loan to O'Neill Enterprises.

against the insurance policies. Their security interest in the insurance policies was discharged when the real estate was sold, by virtue of their agreement, at foreclosure for a price in excess of the first lien debt.

 While the insurance policy on the life of Mr. O'Neill was validly assigned to Philadelphia and Fidelity, it was nevertheless an asset of the bankrupt. By operation of law under § 70 of the Bankruptcy Act, title to this asset vested in the trustee of the bankrupt, subject to the interest of Philadelphia and Fidelity. The trustee was not a party to the agreement between the two insurance companies and Jackson Park regarding this insurance fund, nor did the trustee acquiesce in that agreement. Although he abandoned the real estate, there was no abandonment of the insurance fund, which remains an asset of the bankrupt estate. The agreement between Philadelphia and Fidelity and Jackson Park regarding the insurance fund cannot be given effect. Jackson Park, by its agreement aforementioned, assumed the position of the bankrupt with regard to the primary indebtedness on the property by virtue of the property having been abandoned by the trustee. However, there can be no claim by Jackson Park to the insurance fund as additional security because it remains a separate asset of the bankrupt estate.

Appellants' primary contention in this appeal is that when the trustee abandoned the real property, the insurance fund as additional security was abandoned also, leaving it to be freely assigned by Philadelphia and Fidelity. We find this claim to be totally without merit.

In petitions for abandonment of the real estate filed by the insurance companies, they made no mention of the insurance. Nor did the abandonment order of the bankruptcy court contain any provision relating to the policies of any other collateral security. When the real property was ultimately sold on foreclosure of Jackson Park's second lien deed of trust, its bid was exclusively for real estate, and only real estate was sold.

It is clear that the trustee did not intend to abandon anything other than the equity in the land and building at 2007 Earhart Street when he moved to abandon the property. He was not aware of the insurance fund or its amount at that time. Although the trustee had inquired of the policies' worth, it was four months after abandonment that the cash surrender value was disclosed.[6] Without possessing full knowledge of all the facts regarding the value and amount of the insurance proceeds and without ever intending to abandon that property, the trustee may not properly be deemed to have surrendered his title to the insurance as a part of his abandonment of the real estate. *In re Humeston*, 83 F.2d 187 (2nd Cir. 1936).[7]

In furtherance of the lack of abandonment, this court enunciated in *Textile Banking Company v. Widener*, 265 F.2d 446 (4th Cir. 1959), that a decision of abandonment by the trustee in bankruptcy "is to be made in the exercise of a sound judgment under the approval of the Court." The bankruptcy judge in the instant case neither approved of abandonment of the insurance fund, nor did he have any knowledge of its existence.[8]

---

**6.** *See* n. 3, *supra*.

**7.** In the *Humeston* case, a mortgagee had appealed a bankruptcy referee's order forbidding abandonment of real estate. The mortgagee asserted that if the property had been abandoned, the abandonment would have carried with it the rents which the trustee had collected *from the property*. In affirming the action of the referee, and denying the mortgagee's contention, Judge Learned Hand said,

"In the first place the trustee never meant to abandon the rents and as abandonment is always a matter of intent, he should not have been forced to abandon them in invitum when he was mistaken in the consequences of his act. Moreover, even if the trustee did abandon the equity, he did not include the rents; the two were not inseparably linked."

**8.** Rule 608 of the Rules of Bankruptcy Procedure requires that, generally, abandonment of property by the trustee of the bankrupt must be with approval of the bankruptcy court, preferably by express order.

Therefore, we agree that neither of the insurance companies nor Jackson Park have any present claim to this insurance fund. The fund no longer exists for the purpose of additional security for the first lien indebtedness.

The decision of the district court is accordingly affirmed.

*AFFIRMED.*