In re Vernon SUTTON, Debtor.

Bankruptcy No. 80–00306.

United States Bankruptcy Court,
E. D. Virginia,
Alexandria Division.

April 27, 1981.

Peter K. McCrary, Manassas, Va., for debtor.

Ethan Allen Turshen, Arlington, Va., Trustee in Bankruptcy.

Vernon Sutton, debtor, pro se.

MEMORANDUM OPINION

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

This matter came on for hearing on the application of Ethan Allen Turshen, Es-

quire, the trustee for the bankruptcy estate of the debtor, Vernon Sutton. The trustee is requesting the Court to order the debtor to turn over the sum of $6,800.00 representing the equity proceeds of the debtor's residence sold by foreclosure sale. Prior to the foreclosure sale the trustee abandoned the debtor's residence.[1] The debtor, in his original petition, did not list his residence as being exempt in the homestead deed filed therewith.

Briefly, the uncontroverted facts in the present case are as follows:

The trustee, prior to abandoning the debtor's residence, examined the bankruptcy estate and the assets therein. After obtaining an appraisal of the debtor's residence, which indicated little or no equity for the benefit of the estate, the trustee filed with the Court a notice of intention to abandon real property. As grounds therefor, he stated that the debtor's residence was owned and titled in the names of the debtor and his wife, Mamie M. Sutton, not a party to these proceedings, as tenants by the entirety with common law right of survivorship.[2] After the trustee filed his notice of intention to abandon the debtor filed an amendment to Schedule A–2 of his petition. Therein he listed the Veterans' Administration as an additional holder of a secured claim holding a lien on his residence. Subsequent to the filing of the trustee's request for turnover, the debtor amended Schedule B–4 of his petition so as to exempt the equity proceeds of the sale of his residence.

The question presented is whether the Court may reconsider its Order permitting the trustee to abandon the debtor's residence under Rule 60(b), Federal Rules of Civil Procedure, as made applicable by Rule 924, Rules of Bankruptcy Procedure. If so

empowered, the Court must determine whether the equity proceeds in question should be turned over to the trustee.

Rule 60(b) permits relief to be had from a final order if the movant establishes one or more of six categories of grounds for the requested relief. The trustee argues that subdivisions (1) and (2) of Rule 60(b) are applicable in the present case. This rule states, in pertinent part:

"[Rule 60(b)] On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); ...."

The trustee relies upon the case of *In re Perry*, 336 F.Supp. 828 (W.D.Va.1971). Although the *Perry* court upheld a bankruptcy judge's denial of a rehearing on substantive grounds, the court stated, at 829, that:

"Control of a bankruptcy court over its orders is generally upheld without reference to Rule 60(b) ... which authorizes relief for mistake, inadvertence, surprise, or excusable neglect.... However, when a final order is involved, Rule 60(b) has been held applicable.... (Citations omitted.)

It is generally agreed that for Rule 60(b) to be applied in a given case "there must be some justification for the party's oversight" and, in making this determination, it is appropriate for a court to consider "the circumstances surrounding the party's inaction." *Id.*

The trustee argues that at the time he petitioned the Court to abandon the debt-

---

1. Under schedule B–1 of the debtor's petition, the debtor listed the real property in question, to wit: residence at Lot 79, Section 8–F, Dale City, Virginia, owned by the debtor and his wife, Mamie Mozelene Sutton, as tenants by the entireties.

   The settlement statement showing proceeds of about $17,000.00, after accounting for the payment owed to the holder of the second deed of

trust, results in equity proceeds of $6,800.00, which sum is the object of the trustee's turnover request.

2. Virginia is among those jurisdictions that, in recognizing tenancy by the entirety in real property, exempt such property from the claims of creditors of only one of the spouses. *Vasilion v. Vasilion*, 192 Va. 735, 66 S.E.2d 599, 602 (1951).

or's residence he did not know, nor through due diligence could he have discovered, that the sale of the property would yield proceeds in excess of all expenses and security claims in the property in the amount of $6,800.00. The trustee asserts further that only after the Court granted his request to abandon the property and the property was sold pursuant to a foreclosure sale held by the second deed of trust holder, General Electric Credit Corporation, did he discover (to his surprise) that the excess proceeds came into existence.

The debtor acknowledges that to both his and the trustee's surprise the sale of the property in question yielded proceeds to he and his wife. However, the debtor urges the Court not to revoke its order of abandonment under the authority granted by Rule 60(b) on the grounds asserted by the trustee. The debtor argues that the trustee's surprise in the existence of excess proceeds (despite the latter's asserted diligence in examining the debtor's assets) as constituting grounds sufficient for the Court to reconsider its order of abandonment under Rule 60(b), should not apply in this case. On the contrary, the debtor contends that the trustee's petition to abandon was made intentionally and with knowledge of all the circumstances.

In addition, the debtor asserts that acquiescing to the trustee's position would have the effect of ignoring the intent of the case law interpreting the present law on the issue of abandonment. He states that the application of Rule 60(b) should be limited to those factual circumstances not covered by existing statutes or case law.

▆ The Court, in deciding this case, is guided by the following principles of law. Section 541(a)(1) of the Bankruptcy Code (11 U.S.C. § 541(a)(1)) provides that the commencement of a case in bankruptcy creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." The scope of this paragraph is quite broad. It includes even that property that is needed for a fresh start. However, once the property comes into the estate, the debtor may exempt it under applicable law.[3] House Report No. 95–595, 95th Cong., 1st Sess. (177) 367–8, U.S.Code Cong. & Admin. News 1978, p. 5787. Therefore, it is not to be doubted that in the present case the debtor's interest in the entireties property (i. e., the equity proceeds) is property of the bankruptcy estate unless and until it is exempted by him. *Greenblatt v. Ford, (In re Levy Ford)*, 638 F.2d 14 (4th Cir. 1981) (per curiam).

The debtor's residence, not being exempted under the original homestead deed filed with the debtor's petition, was an asset of the debtor's estate until the time it was abandoned by the trustee under Section 554 of the Bankruptcy Code (11 U.S.C. § 554). This section, for the first time, specifically incorporates the power of abandonment into the bankruptcy laws. The purpose of this section is to codify prior case law and to clarify certain ambiguities resulting from legislative silence on this subject. 4 *Collier on Bankruptcy*, ¶ 554.01, p. 554–6 (15th ed. 1980).

▆ It is a principle of uniform application that once an asset of the estate has been abandoned by the trustee, it is no longer part of the estate and is effectively beyond the reach and control of the trustee. *In re Polumbo*, 271 F.Supp. 640 (W.D.Va. 1967). Indeed, in light of cases decided under the Bankruptcy Act of 1898, the trustee may be precluded from reclaiming property which is abandoned, *Id.* at 643; and this, in turn, has been carried over to the Bankruptcy Code. *See* 9 Am.Jur.2d, *Bankruptcy*, § 256 (1980). It has been stated

---

**3.** Although subdivisions (b) and (d) of Section 522 of the Bankruptcy Code (11 U.S.C. § 522(b) and (d)) set forth the exemptions that a debtor is entitled to claim, the Virginia legislature has determined to "opt out" of these exemptions by enacting Section 34–3.1, *Code of Virginia*, as amended. Accordingly, the state exemptions, and not the federal exemptions, are applicable in the case at bar. Title 34 of the Virginia Code requires that a homestead deed be timely filed in order for a debtor to avail himself of the protection afforded to that portion of his property designated therein.

that abandonment is deemed irrevocable "regardless of any subsequent discovery that the property had greater value than previously believed." 4 *Collier on Bankruptcy, supra,* ¶ 554.02 at p. 554–8.

■ There are but two principal exceptions to the above-referenced rule of irrevocability of abandonment under applicable law. Property will not be deemed to have been abandoned by the trustee where it was actually concealed from him or where his knowledge of the existence of the property was one of mere suspicion, which engendered only a cursory investigation. The rule also is not applicable in those situations where the property is unscheduled by the debtor, thus preventing the trustee from having " 'knowledge, or sufficient means of knowledge, of its existence.' " *LaRoche v. Tarpley,* 4 B.R. 145, 146 (Bkrtcy. M.D. Tenn. 1980) *citing Dushane v. Beall,* 161 U.S. 513, 516, 16 S.Ct. 637, 639, 40 L.Ed. 791 (1896). Neither of these exceptions to the general rule are even remotely available to the trustee under the circumstances surrounding the present case. However, the trustee asserts that a third exception to the general rule may be had where an unintentional abandonment of an asset of the estate is effectuated. In support of this proposition, the trustee relies upon the case of *Jackson Park Realty Company, Inc. v. Williams* (*In re O'Neill Enterprises, Inc.*), 547 F.2d 812 (4th Cir. 1977).

The question presented in *Williams, supra,* involved conflicting claims to the cash surrender value of a life insurance policy on the life of the bankrupt corporation's president ("cash fund"). The cash fund was surrendered by two insurance companies (who had held the policy) for nonpayment of premiums. When the bankrupt corporation filed its petition, the existence of the cash fund was unknown to either the trustee or to the bankrupt corporation.[4]

Prior to filing for bankruptcy, the bankrupt corporation permitted a first deed of trust to be placed on certain real property as security for a construction loan given by the two insurance companies, as evidenced by two notes. As additional security for the loan the bankrupt corporation put up, among other life insurance policies not at issue herein, the life insurance policy in question. This policy was " 'to be drawn upon only in the event of a deficiency after applying the proceeds from the real estate.' " *Williams, supra,* 547 F.2d at 814.

The real property, owing to an attempted sale which failed to produce a bid sufficient to establish any equity proceeds for the bankruptcy estate, was thereafter abandoned. The court in *Williams, supra,* at 814, found that the abandonment order referred only to the real property and not to the life insurance policy and, accordingly, the trustee intended to abandon nothing but the real property.

In finding that the cash fund remained an assert of the estate, the court in *Williams, supra,* stated that neither the trustee nor the bankruptcy court were aware of the cash fund's existence when the real property was abandoned. Although the trustee did inquire as to the insurance policy's worth, this information was not provided to him until four months after the order of abandonment was entered.

Having thoroughly reviewed the Fourth Circuit's decision in *Williams,* the Court finds that the trustee's reliance thereon is unfounded. The factual situation in the instant matter is distinguishable from those circumstances which arose in *Williams, supra.*

The trustee in *Williams,* although aware of the insurance policy's existence, did not have the means to ascertain its cash surrender value until well after the real property had been abandoned. In any event, and perhaps more importantly, the *Williams* court concluded that not only did the insurance companies not meet the criteria set forth in their loan agreement with the bankrupt corporation (pertaining to draw-

---

4. In Schedule B–3 of the bankrupt corporation's petition there appeared "the notation that the polic[y in question was] believed to have no cash value." *Williams, supra,* 547 F.2d at 813.

ing upon the insurance policy as secondary collateral in the event of a deficiency in the first lien debt—a contingency which never occurred) but that the trustee did not request the insurance policy's abandonment nor did the bankruptcy court approve the same.

The record in the present case reflects that the debtor's residence was duly scheduled and that the trustee had a reasonable opportunity to consider its value to the bankruptcy estate. The trustee states, in his brief, that he had the property appraised which resulted in a finding of little or no equity existing in the debtor's residence. In addition, abandonment was, thereafter, requested on the grounds that "such property [was] owned by and titled in the names of" the debtor and his wife as tenants by the entirety.

Having examined the record, the Court finds that the trustee's abandonment of the property is irrevocable as not falling within any of the heretofore-described exceptions to the general rule.

Therefore, the Court, in denying the trustee's petition for a turnover order, hereby reaffirms its Order of Abandonment and, accordingly, holds that the debtor's interest in the equity proceeds of the sale of the residence, held by he and his wife as tenants by the entirety, is not an asset of the bankruptcy estate. The Court holds further that the trustee who, along with the debtor's counsel, Peter K. McCrary, Esquire, holds in trust an interest-bearing joint account, is hereby directed to release forthwith the estate's interest in said account to the debtor's counsel. The latter, in turn, is directed to turn over the equity proceeds released thereby to the debtor.

An appropriate order will enter.