In re SOUTHERN INTERNATIONAL COMPANY, L.P., Debtor.

Kevin R. HUENNEKENS, Trustee, Plaintiff,

v.

Carroll Lee WALKER, Defendant.

Bankruptcy No. 90–33913–S.
Adv. No. 93–3065–S.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

April 6, 1994.

Lawrence H. Framme, LeClair, Ryan, Joynes, Epps & Framme, P.C., Richmond, VA, for plaintiff.

William S. Bilenky, Mechanicsville, VA, for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This matter comes before the Court on Kevin R. Huennekens's ("Huennekens" or "The Trustee") motion for summary judgment on a counterclaim in three counts made by Carroll Lee Walker ("Walker") that was submitted with his answer to a complaint filed by the trustee. This Court has jurisdiction over the matter by virtue of 28 U.S.C. § 1334 and Title 11 of the United States Code and by order of reference entered by the Judges of the United States District Court for the Eastern District of Virginia. Upon consideration of the arguments of counsel, affidavit, and evidence presented at

the January 28, 1994 hearing, the Court makes the following findings of fact and conclusions of law.

## Findings of Fact

Southern International Company, L.P. ("Southern") developed specialty products for the home construction and remodeling markets and also sold a pressurized wood treatment for dimensional lumber. In some of its manufacturing processes, it used a chromated copper arsenate solution ("CCA") which is evidently classified as a toxic substance. On December 7, 1990, several of Southern's trade creditors filed an involuntary Chapter 7 petition against it. While the involuntary petition was not opposed by Southern; it did successfully move to convert the Chapter 7 into a Chapter 11 on January 3, 1991. However, on motion by the United States Trustee, this Court ordered the case be converted back to a Chapter 7 on April 5, 1991. In the Memorandum Opinion issued in relation to that decision, this Court stated that Southern's inadequate cash flow and rapid loss of assets combined with the lack of a reasonable likelihood of reorganization within a reasonable time were sufficient grounds to order Southern's Chapter 11 converted back to a Chapter 7.

After the conversion back to Chapter 7, Huennekens was appointed as Chapter 7 trustee on April 9, 1991 and an April 30, 1993 notice was sent out to all creditors and parties in interest that the meeting of creditors ("the creditors' meeting" or "the § 341(a) meeting"), pursuant to 11 U.S.C. § 341(a), was to be held on May 30, 1991 at 2:00 p.m. A portion of the notice stated that:

> At the meeting, the trustee may give notice of his intention to abandon property that is burdensome or of inconsequential value.... Any objections thereto must be filed pursuant to Local Rules 303 and 304.

During the duly scheduled § 341(a) meeting, the Trustee, having received no timely-filed objections, abandoned Southern's wood treatment facility ("The Facility") at which the CCA solution was used.

On or about July 19, 1991 a major rainfall caused an overflow of the facility's tanks containing the CCA solution ("The Spill"), contaminating Southern's land and surrounding properties. The spill necessitated an Environmental Protection Agency cleanup. After the spill occurred, Walker has alleged that the Trustee, despite his alleged abandonment of the facility, continued to exercise dominion over Southern's facility by attempting to negotiate a lease of the facility and seeking employment of a firm to repair and stabilize the equipment containing the CCA solution. The trustee alleges that he effectively abandoned the facility (before the July 19 spill) at the May 30, 1991 creditors' meeting but that he "continued to receive correspondence and inquiries regarding the Facility." Trustee's *Memorandum in Support of Motion to Dismiss and Motion for Summary Judgment,* P.3. As a result of this correspondence, on January 23, 1992, the Trustee "filed and served written notice of his abandonment of the Facility as well as all other tangible assets of the Debtor". *Id.* In his counterclaim, Walker seems to allege that the notice which stated that the trustee may abandoned property at the § 341(a) meeting and the actual oral notice of abandonment given at the § 341(a) meeting were insufficient and that the post-spill written notice of January 23, 1992 actually marked the point where the trustee effectively abandoned the property consequently making the trustee responsible for the facility during the time the contamination occurred.

Walker chose to make these allegations in an answer filed in response to the trustee's complaint to recover fraudulent conveyances Walker allegedly received. The complaint itself was filed over two years after the spill and over a year since the trustee served written notice of abandonment. In his answer, filed June 1, 1993, Walker not only responded to the allegations made in the complaint but also filed the counterclaim, in three counts, based on the July 19, 1991 spill. In counts I & II, the counterclaim accuses the Trustee of negligence in allowing the spills to occur and also asks that he be held strictly liable for the contamination. As a result of the spill, Walker alleges that he became liable on certain Southern indebtedness totalling $2.3 million on which Walker was guarantor. Count III of the counter-

claim alleges that portions of Walker's own land located adjacent to the contaminated facility were in turn contaminated as a result of the spill. This counterclaim asks for $390,000 in damages as a result of this pollution to Walker's land.

This Counterclaim is the object of the trustee's motion for summary judgment. In his motion, the Trustee gives four defenses upon which he alleges summary judgment should be granted: 1) Counts I, II, and III are moot since the trustee abandoned the facility before the contamination occurred (i.e. at the § 341 meeting), 2) that Counts I and II are barred by the applicable statute of limitations, 3) that Count II should be dismissed because strict liability was improperly pled and that even if properly pled, strict liability does not apply in this situation, and 4) that Counts I and II are barred because the trustee owed no duty to Walker as guarantor of Southern's loans.

### Conclusions of Law

Federal Rule of Civil Procedure 56(c), incorporated into the Bankruptcy Code by Bankruptcy Rule 7056, states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED.R.CIV.P. 56(C). Determining materiality relies on an examination of the relevant substantive law:

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Here there seems to be very little dispute about the facts. Both parties agree on the dates and the events surrounding the spill. Instead, the gravamen of the parties' dispute centers on the effect of substantive law on the facts described above (e.g. whether the trustee's notice was adequate when he first abandoned the property, whether Walker's claim is barred by the applicable statute of limitation, and whether Walker is an "interested party" who is owed a fiduciary duty by the trustee). It is this Court's responsibility at this stage "not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial ... there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party". *Id.* 477 U.S. at 249, 106 S.Ct. at 2511.

The standard for summary judgment has been held to mirror that of a directed verdict's where a "trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. (citations omitted) If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed". *Id.* With this standard in mind, the Court reviews each of the trustee's four allegations.

### Abandonment

It is a well established rule that once a trustee abandons estate property it is no longer part of the estate and is effectively beyond the reach and control of the trustee. *See In re Sutton,* 10 B.R. 737, 739 (Bankr. E.D.Va.1981). Consequently, in most instances the trustee may not be held responsible for any post-abandonment accidents involving the property. Upon abandonment, the property reverts back to the party with the possessory interest and also divests this Court of jurisdiction over the property. *See In re Wilson,* 94 B.R. 886, 888 (Bankr. E.D.Va.1989) and *In re Reed,* 94 B.R. 48, 52 (Bankr.E.D.Pa.1988). Thus, any claim for damage done to the property subsequent to the abandonment has no bearing on the administration of the debtor's Chapter 7 case and must be dismissed. *See Id.*

All of Walker's counterclaims are based on damages alleged to have been sustained be-

cause of the spill. Consequently, if the trustee is deemed to have abandoned the facility before the spill, all of Walker's counterclaims must fall to the trustee's summary judgment motion. The inquiry into the validity of the trustee's claim of pre-spill abandonment may be broken down into three separate subparts: 1) Did the trustee give effective notice of abandonment, 2) Did the trustee's post-abandonment actions revoke the abandonment, and 3) Did the trustee, because of the presence of the CCA solution, have the power to abandon the facility.

### 1. Effective Notice of Abandonment

■ The parties disagree as to what constitutes effective notice of a trustee's intent to abandon property of the estate. Walker argues that the previously mentioned warning contained in the trustee's § 341 meeting notice is ineffective. Instead, he maintains that the first effective notice of abandonment of the facility came with the trustee's January 23, 1992 letter. If Walker's allegations are true, then the trustee's abandonment of the facility did not take place until after the spill occurred. If the trustee's allegations are true and effective notice of the abandonment was given within the § 341 meeting notice, then the trustee abandoned the facility before the spill.[1]

To support his argument, Walker cites *In re Killebrew*, 888 F.2d 1516 (5th Cir.1989). There, the court found that a trustee who failed to effectively abandon a piece of property at the § 341 meeting had not given proper notice even though the § 341 creditors' meeting notice stated that the trustee was empowered to abandon property of the estate and would announce what actions he planned to take at the creditors' meeting. *Killebrew*, 888 F.2d at 1523. The court stated:

> The notification . . . is not adequate as its vague terms would not have placed parties interested in a particular piece of property on notice that they would need to file objections in order to obtain a court hearing. It contains no reference to which property the Trustee intends to abandon and, furthermore, states that the Trustee will reveal his specific plans at the 341(a) meeting.

*Id.*

The question then becomes whether the *Killebrew* court would have held the notice effective if the trustee had competently abandoned the property at the § 341 creditors' meeting. While the Fifth Circuit does not explicitly address such a scenario in its *Killebrew* opinion, it does so implicitly by referencing the case *In re Adkins*[2] with the introductory signal "Cf"[3] after the section cited immediately above. In *Adkins*, the bankruptcy court upheld an abandonment notice contained in a § 341(a) notice[4] similar to the one found in the instant case. However,

---

1. In his response to the trustee's summary judgment motion, Walker seems to question whether Huennekens did actually abandon the property at the creditors' meeting, stating: "[t]he only evidence of the Trustee having abandoned the facility is in the Affidavit of the Trustee wherein he states that he abandoned the treating facility at the May 30, 1991 Meeting of Creditors". Defendant's Response to Motion to Dismiss Claims and Motion for Summary Judgment, p. 7.

 In an affidavit submitted for his motion for summary judgment, the trustee states that: "[a]t the meeting of creditors, I abandoned the Debtor's Miller's Tavern wood treatment facility . . . because it was burdensome and of inconsequential value to the Debtor's estate". Trustee's December 23, 1993 Affidavit, p. 2.
 There is no counter-affidavit submitted by Walker refuting this claim. Consequently, under Federal Rule of Civil Procedure 56(e), for the purposes of this summary judgment motion, this Court takes as admitted by Walker, that the trust-

ee did actually abandon the property at the May 30, 1991 meeting of creditors.

2. 28 B.R. 554 (Bankr.N.D.Miss.1983).

3. "Cf" is used when the "cited authority supports a proposition different from the main proposition but [is] sufficiently analogous to lend support". The Bluebook, Rule 1.2, p. 23 (15th ed.).

4. The notice read:

 > FURTHERMORE this will serve as notice that at the above scheduled meeting the trustee will announce which assets he plans to abandon. Any objection to such abandonment shall be filed within ten days after such announcement. If objection is filed, the matter shall be set down for hearing. If no objection is filed the trustee shall be deemed to have abandoned the property with the court's approval. . . .

 *In re Adkins*, 28 B.R. 554, 557 (Bankr.N.D.Miss. 1983).

unlike the trustee in *Killebrew,* the trustee in *Adkins* did effectively abandon property by announcing so during the creditors' meeting. *Id.* at 557. By citing *Adkins* in such a manner, this Court assumes that *Killebrew* is meant to be binding only in those circumstances where the trustee ineffectively abandons property of the estate; a situation not shared with the instant case.

■ Even without the *Adkins* decision, *Killebrew* is of questionable value to this Court. While it may continue to be an accurate statement of the what constitutes effective notice of abandonment in the Fifth Circuit, the decision is not binding on courts in the Fourth Circuit. At least in the district in which this Court sits, notice of abandonment that appears in the § 341 creditors' meeting notice is effective notice. This holding is supported not only by the plain meaning of Bankruptcy Rule 6007, the rule that implements 11 U.S.C. 554, but also in that Rule's Advisory Committee Note.

Bankruptcy Rule 6007, in relevant part, states:

(a) **Notice of Proposed Abandonment or Disposition; Objections.** Unless otherwise directed by the court, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code.

Bankruptcy Rule 6007(a). From the plain meaning of the statute, this Court discerns a requirement to notice the proper parties of the trustee's proposal to abandon estate property. Beyond that, the Rule requires little else. The Rule does not contain any requirement that the property be specifically identified. Consequently, the trustee's no-

tice that he "may give notice of his intention to abandon property that is burdensome or of inconsequential value" at the creditors' meeting is sufficient to put the proper parties on notice of any proposal the trustee may harbor for abandoning estate property.

■ Requiring more notice than Bankruptcy Rule 6007 requires would in many cases become a very expensive proposition. This Court requiring trustees to send out notices to all proper parties each time he or she intends to abandon certain pieces of property would mean less money for the creditors and more money eaten up by duplicative administrative costs. In many instances, the trustee's compensation is so limited as to make further effort prohibitive. This concern is echoed by Bankruptcy Rule 6007's Advisory Committee Note which recommends that the notice required by 6007(a) appear in the notice of the meeting of creditors so that "separate notices would not be required" and the "burden, expense and inefficiency" of additional notices could be avoided[5].

Because all proper parties were effectively noticed of the proposed abandonment of estate property through the notice of the meeting of creditors, the trustee did properly notice his intent to abandon the facility at that creditor's meeting. Because no party objected to the proposed abandonment, the trustee is treated as effectively abandoning the facility on May 30, 1991, some forty-nine days before the July 19, 1991 spill.

### 2. Effect of Trustee's Post–Abandonment Activities on the Continuing Validity of his May 30, 1991 Abandonment

Walker also seems to argue that certain actions[6] undertaken by the trustee post-

---

**5.** In relevant part, the Advisory Committee Note states:

Subdivision (a) requires the notices to be sent to all creditors, indenture trustees, and committees elected under § 705 or appointed under § 1102 of the Code. This may appear burdensome, expensive and inefficient but the subdivision is in keeping with the Code's requirement for notice and the Code's intent to remove the bankruptcy judge from undisputed matters. The burden, expense and inefficiency can be alleviated in large measure by incorpo-

rating the notice into or together with the notice of the meeting of creditors so that separate notices would not be required.

**6.** Among other things, Walker alleges that after the May 30, 1991 creditors' meeting, the trustee tried to negotiate a lease for the facility with a Charles Weeden on July 18, 1991, that on November 21, 1991 the trustee wrote the State Water Control Board requesting an enlargement in the time for submitting a report on the damage to the facility, and continued to accept lease

abandonment either reveal that the trustee really did not abandon the facility at the creditor's meeting or that the trustee's post-abandonment activities somehow revoked the abandonment of the facility. As previously stated, since no counter-affidavit was filed, the trustee's assertion contained in his affidavit that he did abandon the facility at the creditors' meeting is deemed established for purposes of the this summary judgment motion. However, the Court must address whether or not post-abandonment activities by the trustee can revoke a previously valid abandonment.

▇▇ The well settled general rule is that once a trustee abandons estate property, the abandonment is irrevocable. *In re Sutton*, 10 B.R. 737, 740 (Bankr.E.D.Va.1981), *In re Hunter*, 76 B.R. 117, 118 (Bankr.S.D.Ohio 1987), *In re Gracyk*, 103 B.R. 865, 867 (Bankr.N.D.Ohio 1989), *Matter of Killebrew*, 888 F.2d 1516, 1520 (5th Cir.1989). Few exceptions have been carved out of this policy. However, a trustee is allowed to reacquire previously abandoned property when it has been concealed from him or where information concerning the property has not been appropriately disclosed in order for the trustee to make an informed decision regarding abandonment. *See In re Sutton*, 10 B.R. at 740, *Hunter*, 76 B.R. at 118, and *Killebrew*, 888 F.2d at 1520 n. 10.

▇▇ Here none of the circumstances that would permit revocation of abandonment are present. The trustee, post-abandonment, may have tried to negotiate a lease of the facility or may have even accepted lease payments. These actions merely evidence activities that the trustee had no authority to perform and do not revoke the May 30, 1991 abandonment. Thus, the trustee is still held to have irrevocably abandoned the facility at the creditors' meeting.

### 3. Trustee's Power to Abandon Property Containing the CCA Solution

▇▇ While Walker concentrates on the arguments of ineffective notice and post-abandonment activities to support his contention that the trustee only abandoned the payments from the lessee of the facility between

facility after the spill, there is a more basic issue—whether the trustee had a right to abandon the facility while its machinery still contained the CCA solution. By a five member majority, the Supreme Court in *Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), placed a limitation on the trustee's broad powers of abandonment by stating that "[n]either the Court nor Congress has granted a trustee in bankruptcy powers that would lend support to a right to abandon property in contravention of state or local laws designed to protect public health". *Id.* 474 U.S. at 503, 106 S.Ct. at 760. The Court was addressing a Chapter 7 trustee's proposed abandonment of a facility that had been contaminated when some of the waste oil it was processing was tainted with PCB, a highly toxic carcinogen. The owners of the facility had been processing the contaminated oil in violation of the operating permit issued to it by the New Jersey Department of Environmental Protection. The debtor filed for bankruptcy protection after it was discovered that the company had violated this permit and after negotiations for cleanup had begun. Ultimately, the Court denied the trustee's request to abandon the property but then characterized the exception they had carved out:

> This exception to the abandonment power vested in the trustee by § 554 is a narrow one. It does not encompass a speculative or indeterminate future violation of such laws that may stem from abandonment. The abandonment power is not to be fettered by laws or regulations not reasonably calculated to protect the public health or safety from imminent and identifiable harm.

*Id.* 474 U.S. at 507 n. 9, 106 S.Ct. at 762 n. 9. The Fourth Circuit has echoed the Supreme Court's view that the exception created in *Midlantic* should be viewed narrowly. In *In re Smith–Douglass, Inc.*, 856 F.2d 12 (4th Cir.1988), the Fourth Circuit stated that "this narrow exception applies where there is a serious health risk, not where the hazards are speculative or may await appropriate ac-

April, 1991 and January 1992.

tion by an environmental agency". *Id.* at 16 (citation omitted).

The instant case can be distinguish from *Midlantic* in that when Huennekens took possession of the property, the debtor apparently had the authority to use the CCA solution, there had been no spill, and there was no imminent danger of a spill. The very fact that it took over six weeks for the spill to occur reveals that the danger of contamination was not imminent. The danger of a spill, which was precipitated by rainfall and poor maintenance, as of the date of the abandonment must be characterized as speculative at best. Given the accuracy of weather forecasts, there could be only a guess as to how much it was going to rain after the abandonment. Indeed, the spill could have been avoided altogether by simply keeping the machinery in proper working order. Much has been made of the trustee's firing of one David Baughan, the person whom Walker states was responsible for keeping the facility in compliance with the State Water Control Board permit regulations. Assuming that Mr. Baughan was the only person who could safely maintain the equipment containing the CCA solution, the debtor still had approximately forty-nine days after the trustee's abandonment to notify the proper authorities of the possibility of a spill. Although the company is in bankruptcy and the debtor's estate is under the control of the trustee, the filing of the petition does not negate the existence of the debtor-company [7] and the debtor could have rehired Mr. Baughan or employed someone with his technical experience. Bolstering this Court's finding that a spill was not imminent is the lack of objections to the trustee's abandonment of the facility at the creditors' meeting.

Supporting this Court's decision is *In re Doyle Lumber, Inc.,* 137 B.R. 197 (Bankr.

W.D.Va.1992). There the Commonwealth of Virginia and a lienor objected to a Chapter 7 trustee's proposed abandonment of a wood treatment facility that also used the CCA solution. In that case, the plant had been shut down; however, the CCA solution was still present in the machinery. Even though rainwater had previously caused a spill [8], albeit a containable one, and future spills were possible, the Court, citing *Midlantic,* allowed the trustee to abandon the facility citing no immediate or serious threat to public health and safety. *Id.* at 203. This Court holds that since the trustee abandoned the facility when there was no immediate and serious threat to the public health and safety, the abandonment was proper and does not fall into the narrow exception created by *Midlantic.*

▋ Because the trustee is held to have abandoned the facility before the spill, the trustee may not be held responsible for any damages flowing from that or any other accidents at the facility after the May 30, 1991 creditors' meeting. Also, because abandonment of the facility divests this Court of any jurisdiction over the facility, any action involving the facility's operations after the abandonment are not properly before this Court. In sum, because the trustee abandoned the facility before the spill, summary judgment should be granted in favor of the trustee on all three of Walker's counts contained in his counterclaim.

### Statute of Limitations

While summary judgment has been rendered on Walker's counterclaim in favor of the trustee, in the interest of thoroughness and in anticipation of appeal, the trustee's remaining arguments may also be examined. In his next argument for summary judgment,

---

**7.** *See In re Charles George Land Reclamation Trust,* 30 B.R. 918, 923 (Bankr.D.Mass.1983) (stating that if the trustee abandoned estate property it would revert back to the debtor).

**8.** The court in *Doyle* states in a footnote:

While there was testimony at the December 18, 1991 hearing that rainwater running off the treatment pad into the underlying sump had caused the sump to overflow onto the pad,

and might do so again, the testifying witness, who was the hazardous waste enforcement chief for the Virginia Department of Waste Management, did not state or imply that this possibility constituted an immediate threat to the health and safety of the public. Although not required to do so as a condition of abandonment, if the chapter 7 trustee deems it appropriate, he may take such measures as are practicable to eliminate the overflow.

*Doyle Lumber,* 137 B.R. at 202–03, n. 9.

the trustee contends that counts I and II[9], which only involve land owned by the debtor and not Walker personally, are barred by the applicable statute of limitation. An analysis into whether counts I and II are untimely filed would necessarily first requires a characterization of the actions brought in those counts and than an application of the proper statute of limitations.

■ Walker characterizes counts I and II as claims for property damage. He so reasons by stating that the spillage which reduced the value of the facility was the catalyst which made him liable on his guaranty of the debtor's notes. Under section 8.01–243 of the Code of Virginia, a five year statute of limitations applies to all property damage suits.[10]

This Court thinks the more proper statute of limitation is contained in section 8.01–248 which mandates a one year statute of limitation.[11] This decision is supported in part by *Board of Supervisors v. Thompson Assoc.*, 240 Va. 133, 393 S.E.2d 201 (1990) which stated: "the applicability of the statute of limitations is determined by the object of the litigation, not the form in which it is filed". *Id.* at 204. Here the true object of the litigation is the trustee and his alleged lack of care in administering assets of the debtor's estate, not the damage to the facility and the land upon which it is located.

Supporting this contention is Walker himself. In count I, he alleges that it was the "negligent acts of the trustee causing the contamination of the site and the facility" which caused Walker's liability on his guaranty. Count II similarly states that "[t]he trustee is strictly liable, through his failure to take reasonable steps necessary to protect all of the Debtor's property he received" which

again caused Walker's guaranty to be called upon to satisfy the debt. These statements make it clear that it is the trustee and his actions that are at the center of Walker's first two counterclaims not the spill and the damage it wrought to the property of the debtor.

Holding the trustee liable for his acts was addressed in *In re Hutchinson*[12] which stated:

> Although many of the duties of a bankruptcy trustee are statutory, the basis for trustee liability is not. The basis for holding bankruptcy trustees liable is the equitable power of courts to enforce fiduciary duties. (citations omitted) Notwithstanding the superficial resemblance of Appellants' claim to an action for common law negligence, their claim is fundamentally equitable in nature, comparable to an action for breach of trust seeking to compel the trustee to redress the breach.

*In re Hutchinson*, 5 F.3d 750, 757 (4th Cir. 1993). Thus, using the *Hutchinson* standard, the correct characterization of Walker's first two counterclaims would be a breach of fiduciary duty in the trustee's maintenance of the estate's property. A breach of fiduciary duty has been held to sound in tort not contract law. *Cf. C–T of Virginia, Inc. v. Barrett*, 124 B.R. 689, 693 (W.D.Va.1990) (addressing the breach of fiduciary duty owed by corporate officer to the corporation). Because the statute of limitation for a breach of a trustee's fiduciary duty is not expressly covered elsewhere, the "catch-all" provision of 8.01–248 applies mandating a one year statute of limitation.

■ The remaining issue to be resolved is when the one year began to run.

9. Counts I and II deal with Walker's alleged $2.3 million obligation arising out of his guaranty on some of the debtor's notes that were secured by the facility. According to Walker, the obligation arose when the facility and the land it occupied depreciated in value as a result of the spill caused, as Walker alleges, by the trustee's negligence.

10. In its entirety the statute reads:

 B. Every action for injury to property, including actions by a parent or guardian of an infant against a tort-feasor for expenses of cur-

·ing or attempting to cure such infant from the result of a personal injury or loss of services of such infant, shall be brought within five years after the cause of action accrues.
Va.Code Ann. § 8.01–243 (Michie Rep.Vol.1992).

11. In its entirety section 8.01–248 states: "Every personal action, for which no limitation is otherwise prescribed, shall be brought within one year after the right to bring such action has accrued."
Va.Code Ann. § 8.01–248 (Michie Rev.Ed.1992).

12. 5 F.3d 750 (4th Cir.1993).

In *International Surplus Lines Ins. Co. v. Marsh & McLennan,* 838 F.2d 124 (4th Cir. 1988), the court stated: "[i]n Virginia, the statutory period begins to run when the breach [of fiduciary duty] was or should have been discovered by the plaintiff." *Id.* at 128. Any additional spills after the original July 19, 1991 spill would not begin a new statute of limitation period. *See Granahan v. Pearson,* 782 F.2d 30, 33 (4th Cir.1985). However, having come to the final question in the analysis, this Court finds that material facts concerning when the trustee's breach was or should have been discovered by the plaintiff are unclear. Thus any ruling of this portion of the trustee's argument would be premature. The Court would need to hear evidence and determine at what time Walker knew or should have known of the breach of the fiduciary duty and the resulting spill and then calculate the one year statute of limitation from that point before stating that Walker's claims in counts I and II are or are not timely filed.

### Strict Liability

 The trustee states that in count II Walker has improperly plead the allegation that the trustee should be held strictly liable for the spill. The trustee also states that since handling CCA is not an "ultra-hazardous activity", the trustee cannot be held strictly liable under present Virginia law. Since it appears that defining what constitutes an "intrinsically dangerous and ultra-hazardous activity" [13] is a question of material fact, not a question of law; whether or not the trustee should be held strictly liable is not a proper issue for this summary judgment motion. Therefore, the Court will not address the issue at this time, waiting instead to hear evidence from both sides, if necessary.

### Duty Owed Walker as a Guarantor

The trustee's allegation that he owes no duty to Walker as a guarantor goes to the validity of counts I and II. If no fiduciary duty is owed to Walker as the guarantor of the debtor's obligations, then Walker cannot argue that the trustee breached his duty of care to Walker in allowing the spill to occur. The trustee alleges that Walker is not a party in interest because he has no pecuniary interest in the distribution of the estate. This argument ignores the fact that Walker's liability as a guarantor on some of Southern's debt is reduced when the estate pays down on the debt he guarantees.

 The Court is unaware of any case that explicitly states that a Chapter 7 trustee owes a guarantor of the debtor's obligations any fiduciary responsibility; however by examining the Code and a related case it appears clear that a fiduciary duty does exist.

The trustee does admit that he owes a fiduciary duty to creditors of the estate. *See* Memorandum in Support of Motion to Dismiss and Motion for Summary Judgment p. 10 (citing *In re 2001 Cincinnati, Inc. VIP Clubs etc.,* 43 B.R. 6, 7 (Bankr.S.D.Ohio 1984)). The Code defines a "creditor" as being "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor". 11 U.S.C. § 101(10)(A). A "claim" is defined as being a "right to payment, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured;". 11 U.S.C. § 101(5)(A). Even though Walker appears not to have been called upon to honor his guaranty, the generous definition of a "claim" allows contingent or unmatured liabilities to be considered claims. Accordingly, a guarantor who has not been called upon to honor his guaranty, may nevertheless still file a claim. Because Walker has a claim that arose prepetition he may be classified as a creditor.

While Walker himself does not appear to have timely filed a proof of claim, 11 U.S.C. § 501(c) [14] allows for a proof of claim to be filed by the debtor or the trustee when a creditor has not timely filed a claim.

---

**13.** *See M.W. Worley Constr. Co. v. Hungerford, Inc.,* 215 Va. 377, 210 S.E.2d 161, 163 (1974).

**14.** 11 U.S.C. § 501(c) states:

(c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

*Conclusion*

Since the trustee abandoned the facility beforehand, he may not be held liable for the spill or its contamination. Because all three of Walker's counterclaims are based on the July 19, 1991 spill and its resulting damage and contamination, summary judgment should be granted in favor of the trustee on all of Walker's counterclaims.

An order conforming to this Memorandum Opinion will be entered contemporaneously herewith.