Filed 10/19/23

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BREANNE MARTIN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LESLIE T. GLADSTONE, as Trustee in Bankruptcy, etc.,<br><br>    Defendant and Respondent. | D080534<br><br><br>(Super. Ct. No. 37-2020-00008341-CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge. Reversed.

William Iagmin, Jon R. Williams, James S. Iagmin, Carlie M. Bouslaugh and Jennifer French, for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Peter L. Garchie, Lann G. McIntyre and James P. McDonald for Defendant and Respondent.

Plaintiff Breanne Martin alleges that she was injured when a large metal gate fell on her while she was on a residential rental property located in Alpine, California. Martin initially filed claims for negligence and premises liability against the owners of the property. But upon learning that the owners had previously filed a bankruptcy petition, Martin amended her complaint to add the court-appointed bankruptcy trustee, Leslie T. Gladstone, as a defendant.

Gladstone demurred to Martin's complaint, asserting that application of federal statutory and common law demonstrated that Martin could not state a cause of action against her. First, Gladstone argued that a roughly 140-year-old common law rule referred to as the "*Barton* doctrine"[1] required Martin to seek leave of the court that appointed Gladstone before filing an action against her in a different forum. Second, Gladstone maintained that she could not be held liable for Martin's injuries because two days prior to the accident, she filed a notice of intent to "abandon" the property where the injury is alleged to have occurred and this abandonment was effectuated a few weeks later. According to Gladstone, a trustee's abandonment of property in a bankruptcy estate is effective nunc pro tunc to the date the bankruptcy petition was filed, and reverts all interest in the property to the debtor as if no bankruptcy petition was ever filed. The trial court rejected Gladstone's argument regarding application of the *Barton* doctrine, but accepted her argument regarding the abandonment of the property at issue;

---

[1] Originating from United States Supreme Court precedent in *Barton v. Barbour* (1881) 104 U.S. 126 (*Barton*) and its progeny, the *Barton* doctrine "requires, before filing a lawsuit against officers appointed or approved by the court, obtaining leave from the bankruptcy court that appointed or approved them." (*Akhlaghpour v. Orantes* (2022) 86 Cal.App.5th 232, 238–239 (*Akhlaghpour*).) We discuss the contours of the *Barton* doctrine, and its significant statutory exception, later in this opinion.

2

the court sustained Gladstone's demurrer on this ground and entered judgment in favor of Gladstone.

On appeal, Martin contends the trial court erred in concluding that Gladstone's abandonment of the relevant property after the accident prevents Gladstone from being held liable for Martin's injuries. Martin further argues that the trial court correctly determined it could not conclude as a matter of law that the *Barton* doctrine applies to divest the trial court of subject matter jurisdiction over Martin's claims. According to Martin, the trial court therefore erred in sustaining Gladstone's demurrer and entering judgment in her favor. We agree with Martin's appellate contentions and reverse the trial court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND[2]

A. *Factual Allegations*

On October 9, 2018, defendants Christopher Dougherty and Nereida Dougherty filed a voluntary petition with the bankruptcy court under title 11 of the Bankruptcy Code. In that filing, the Doughertys listed JTA Real Estate Holdings, LLC (JTA) as one of their assets. They indicated that JTA owned three real properties, including a residential rental property located on Japatul Spur in Alpine (the Alpine Property).

On April 4, 2019, the bankruptcy court converted the Dougherty defendants' bankruptcy case from a chapter 11 proceeding to a chapter 7 proceeding and appointed Leslie T. Gladstone as the bankruptcy trustee. Roughly six weeks later, the same court granted Gladstone's ex parte application seeking permission to "Operate Business During Chapter 7 Case

---

[2] The facts are taken from the allegations of the Complaint and matters subject to judicial notice. (See *3250 Wilshire Boulevard Bldg. v. Employers Ins. of Wausau* (1995) 39 Cal.App.4th 1277, 1279.)

3

Pending Sale of Debtors' Assets." The court "authorized" Gladstone to "operate the businesses of the Debtors, accept lease payments, and pay expenses that arise in the ordinary course of the business, until such time as the Estate Properties and the JTA Real Estate Properties can be sold." Gladstone submitted monthly operating reports to the bankruptcy court, which included financial documents related to the operation of the Alpine Property as a residential rental.[3]

On July 19, 2019, Gladstone filed in the bankruptcy court a document titled "Trustee's Notice of Proposed Abandonment of Property" with respect to the Alpine Property. (Some capitalization omitted.)[4] Gladstone indicated that the Alpine Property had a value that was less than the value of the liens against the property, and she specified that after she began marketing the Alpine Property for sale, she became aware of "numerous code violations against the property," including the "failure to obtain building permits, violations of County Building Codes, and grading permit violations," which had caused at least two potential purchasers to withdraw offers they had made.[5]

---

[3]    For example, a profit and loss statement included in the filings demonstrated that Gladstone had collected rents and paid out expenses for the operation of the three real properties held by JTA Real Estate Properties, such as insurance premiums and utility costs.

[4]    The notice provided information to individuals who had objections to Gladstone's proposed abandonment of the Alpine Property as to the process for filing an objection in the bankruptcy court, which the notice indicated was required to be done within 21 days of the filing of the notice of proposed abandonment.

[5]    Gladstone clarified that the "abandonment does not include the transaction for grant of an easement on this property to SDG&E, which is

4

Two days later, on July 21, Martin was at the Alpine Property when she suffered "serious injuries" as a result of an iron gate "[falling] on her." According to Martin, at the time she sustained her injuries, the defendants knew or should have known that the gate created an unreasonably dangerous condition on their property.

Less than a month later, Gladstone filed a "Report of Abandonment of Property." Gladstone indicated that the time for filing a request for hearing on an objection to her notice of intent to abandon the Alpine Property had expired without an objection. In the document Gladstone states, "The Trustee hereby abandons and forever disclaims any further interest in and to the following described real property of the debtor, namely:  . . . .  [¶]  [The remaining] interest after transfer of easement to SDG&E for [the Alpine Property]," and later continues, "[t]he right of possession of the abandoned property is hereby relinquished to the debtor, to be assumed at no cost to the undersigned."

B.    *The Demurrer*

Martin filed a form complaint asserting causes of action for general negligence and premises liability (the Complaint). It included an allegation that each of the defendants "owned, leased, occupied, maintained, or controlled" the Property. At the time of the initial filing, Martin identified Christopher D. Dougherty, Nereida I. Dougherty, and JTA Real Estate Holdings, LLC as named defendants. She later filed a form amendment to the Complaint, replacing a Doe defendant with "Leslie T. Gladstone, Chapter 7 Trustee for Christopher & Nereida Dougherty Bankruptcy."

---

pending between the estate and SDG&E," and elsewhere indicated that the "Trustee is abandoning the property subject to the easement."

Gladstone demurred to the Complaint, raising two arguments as to why Martin was unable to state a cause of action against her. Gladstone's main argument was that a common law rule referred to as the "*Barton* doctrine" deprived the trial court of subject matter jurisdiction to adjudicate Martin's claims against Gladstone if Martin failed to show she obtained permission from the bankruptcy court to file the claims. She set out as an alternative basis for her demurrer the argument that her abandonment of the Property operated to divest her of title to the Alpine Property—and Gladstone argued, of "all possession, ownership, and control" over the property—nunc pro tunc to the date the Doughertys' bankruptcy petition was filed. According to Gladstone, she therefore "lacked any ownership, possession, or control over the subject property at the time of [the injury-causing] incident."[6]

Martin opposed the demurrer, contending that a statutory exception to the *Barton* doctrine applies in this case because Gladstone had sought and obtained from the bankruptcy court the authority to carry on the business of the Doughertys during the pendency of the bankruptcy case, including continuing to operate the Alpine Property as a residential rental by accepting lease payments and paying expenses. Martin also opposed the demurrer with respect to the alternative ground asserted, contending that the nunc pro tunc reversion of title to and a possessory interest in the Alpine Property did not

---

[6] Gladstone filed a request for judicial notice in support of her demurrer regarding multiple documents that had been filed in the bankruptcy action, including, among other things, the Doughertys' original bankruptcy petition, the order converting the bankruptcy matter from a chapter 11 case to a chapter 7 case, the order appointing Gladstone as trustee of the bankruptcy estate, Gladstone's proposed abandonment filing, and Gladstone's August 16, 2019 "Report on Abandonment of Property."

overcome judicially noticeable facts the demonstrated Gladstone's actual possession and control over the property during the relevant time period.

After a hearing on Gladstone's demurrer and granting Gladstone's request for judicial notice in full, the trial court rejected Gladstone's argument that Martin failed to sufficiently allege subject matter jurisdiction under the *Barton* doctrine theory. At the same time, the court agreed with Gladstone's contention that Martin could not state claims for negligence or premises liability against her as a result of the legal effect of Gladstone's abandonment of the Alpine Property under bankruptcy law. As a result, the court sustained Gladstone's demurrer without leave to amend, entering judgment in her favor.

## DISCUSSION

We review an order sustaining a demurrer by applying well-established principles. "[W]e examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) "For purposes of reviewing a demurrer, we accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law. We may also consider matters subject to judicial notice." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 (*Yvanova*).)[7]

---

[7] The trial court took judicial notice of the bankruptcy court orders and filings Gladstone submitted. The existence and facial contents of these documents were properly noticed in the trial court under Evidence Code sections 452, subdivision (d), and 453. Therefore, under Evidence Code section 459, subdivision (a), notice by this court is mandatory, and we take notice of the existence and contents of these records, though not of disputed

Martin asserts causes of action for negligence and premises liability against Gladstone and the other defendants. "The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.) Section 1714 of the Civil Code sets forth "the basic policy of this state" with respect to injuries caused by a dangerous condition on land, which "is that everyone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property." (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 672; *Hassaine v. Club Demonstration Services, Inc.* (2022) 77 Cal.App.5th 843, 851.) " 'The proper test to be applied to the liability of the possessor of land in accordance with [this policy] is whether in the management of [one's] property [one] has acted as a reasonable [person] in view of the probability of injury to others.' " (*Kinsman,* at p. 672.) This requires persons "to maintain land in their possession and control in a reasonably safe condition." (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674.) To comply with the duty, therefore, a possessor of land must " ' " ' "inspect [the premises] or take other proper means to ascertain their condition" ' " ' and, if a dangerous condition exists that would have been discovered by the exercise of reasonable care, [the possessor must] give adequate warning of or remedy it." (*Staats v. Vintner's Golf Club, LLC* (2018) 25 Cal.App.5th 826, 833.)

Here, Martin has alleged that she suffered "serious injuries" when an iron gate on the Alpine Property fell on her. She further alleged that the named defendants, including Gladstone, "owned, leased, occupied,

---

or disputable facts stated in them. (See *Yvanova, supra,* 62 Cal.4th at p. 924, fn. 1.)

maintained, or controlled" the property. According to Martin, at the time she sustained her injuries, the defendants knew or should have known that an unreasonably dangerous condition existed on their property. These allegations sufficiently state a cause of action for negligence and/or premises liability.

Gladstone does not dispute that these allegations would be sufficient under normal circumstances. She contends, however, that Martin cannot state a cause of action against her for negligence and premises liability based on her role as trustee of the Doughertys' bankruptcy estate. Specifically, Gladstone relies on judicially noticed documents from the bankruptcy court proceeding, which she contends establish as matter of law that she abandoned the Alpine Property and thereby relinquished any possession or control over the property to the Doughertys nunc pro tunc to the date of the filing of their bankruptcy petition in October 2018, roughly nine months before the accident. Gladstone alternatively contends that the trial court's demurrer ruling should be affirmed because Martin is unable to bring any claim or claims against her in connection with her role as trustee of the Doughertys' bankruptcy estate because Martin failed to seek leave of the bankruptcy court to file the action, as required by the *Barton* doctrine.

A.    *Gladstone's abandonment of the Alpine Property did not operate retroactively as a matter of law.*

In considering the effect of Gladstone's abandonment of the Alpine Property on Martin's alleged claims for negligence and premises liability, we examine the law related to the creation of a bankruptcy estate, as well as that related to a trustee's abandonment of an asset that was originally deemed to be a part of a bankruptcy estate.

9

Upon the filing of a bankruptcy petition, a debtor's legal or equitable interests in property at the time of the commencement of the case become property of the bankruptcy estate. (See 11 U.S.C. § 541(a); see also *Schwab v. Reilly* (2010) 560 U.S. 770, 774.) Property continues to remain part of the bankruptcy estate unless it is administered, abandoned, or the bankruptcy court orders otherwise. (11 U.S.C. § 554(d).) Bankruptcy estate property may be abandoned in one of three ways: (1) a trustee may proactively abandon property that is burdensome or of inconsequential value after notice and a hearing; (2) the court may order the trustee to abandon property that is burdensome or of inconsequential value upon the request of a party in interest and notice and a hearing; or (3) property that was scheduled under title 11 of the United States Code section 521(a)(1) and not otherwise administered at the time of the closing of the bankruptcy case is abandoned to the debtor by operation of law. (11 U.S.C. § 554(a), (b), (c).)

The general rule is that "once a trustee abandons estate property it is no longer part of the estate and is effectively beyond the reach and control of the trustee." (*Huennekens v. Walker* (*In re Southern Int'l Co., L.P.*) (Bankr. E.D.Va. 1994) 165 B.R. 815, 819 (*Southern International*), citing *In re Sutton* (Bankr. E.D.Va. 1981) 10 B.R. 737, 739.)[8] "Under [title 11 of the United States Code, section] 554, abandonment divests the property from the estate. Ownership and control of the asset is *reinstated* in the debtor with all rights

---

[8] "While we are not bound by decisions of the lower federal courts, even on federal questions, they are persuasive and entitled to great weight. [Citation.] Where lower federal precedents are divided or lacking, state courts must necessarily make an independent determination of federal law [citation], but where the decisions of the lower federal courts on a federal question are 'both numerous and consistent,' we should hesitate to reject their authority." (*Etcheverry v. Tri-Ag Service, Inc.* (2000) 22 Cal.4th 316, 320–321.)

10

and obligations as before filing a petition in bankruptcy." (*In re Franklin Signal Corp.* (Bankr. D.Minn. 1986) 65 B.R. 268, 274, italics added; see *In re Wilson* (Bankr. E.D.Va. 1989) 94 B.R. 886, 888 (*Wilson*) ["Upon abandonment, the property reverts to the party with the possessory interest."]; see also *Artesanias Hacienda Real S.A. de C.V. v. North Mill Capital, LLC* (*In re Wilton Armetale, Inc.*) (3d Cir. 2020) 968 F.3d 273, 284 [when the evidence of abandonment is clear and overt, "any abandoned causes of action revert to their prior owner"].) Thus, for example, in *In re Argiannis* (Bankr. M.D.Fla. 1993) 156 B.R. 683, the court relied on the date the property at issue was "deemed abandoned" as the date when "the [bankruptcy] estate no longer had an interest in the property" for purposes of determining when postpetition interest accrued on a creditor's interest in the bankruptcy estate's interest in the property. (*Id.* at p. 688.) It concluded that "[a]fter abandonment on July 24, 1991, [which occurred after notice of the proposed abandonment had expired without objection] the estate no longer had an interest in [the property] on which [the creditor's] interest could accrue." (*Ibid.*) Consistent with these authorities, Gladstone's "Report of Abandonment" dated August 16, 2019 is phrased in the present tense, representing that Gladstone "hereby *abandons* and forever *disclaims*" any interest in the property. It further notes that the "right of possession of the abandoned property *is hereby relinquished* to the debtor." (Italics added.)

Gladstone contends, however, that her abandonment of the Alpine Property did not merely *revert* title and possession from Gladstone back to the Doughertys as of the date of abandonment, but instead operated as if the Doughertys retained title, possession, and control of the Alpine Property, without interruption, *throughout* the pendency of the bankruptcy

11

proceeding.[9]  It is true that some authorities have expressed the rule in such a way that retroactivity of the abandonment is implied, at least for some purposes.  For example, it has been stated that "[abandoned property] reverts to the debtor and stands as if no bankruptcy petition was filed" (*In re Dewsnup* (10th Cir. 1990) 908 F.2d 588, 590), or that " '[w]hen property of the bankrupt is abandoned, the title reverts to the bankrupt, *nunc pro tunc*, so that he is treated as having owned it continuously' " (*Moses v. Howard Univ. Hosp.* (D.C.Cir. 2010)  606 F.3d 789, 795).  But a close examination of the cited cases demonstrates that these statements do not represent an absolute rule to be applied without consideration of the factual circumstances of a case.  In other words, courts do not blindly give retroactive effect to a trustee's abandonment of bankruptcy estate property in every situation.  Rather, application of a rule treating the debtor as having owned the abandoned property continuously despite the filing of a bankruptcy petition "is a fiction, and a fiction is but a convenient device, invented by courts to aid them in achieving a just result.  It is not a categorical imperative, to be blindly followed to a result that is unjust."  (*Wallace v. Lawrence Warehouse Co.* (9th Cir. 1964) 338 F.2d 392, 394, fn. 1.)

Although *Wallace* was one of the earliest courts to acknowledge the legal "fiction" of retroactive application of abandonment and to reject its wholesale application without consideration of the equities, other case authority compellingly demonstrates that the rule of retroactivity is to be invoked only where justice requires its application.  (See, e.g., *Van Curen v. Great Am. Ins. Co.* (*In re Hat*) (Bankr. E.D.Cal. 2007) 363 B.R. 123, 141 ["the

_____

9     Gladstone contends that "[t]he legal effect of the abandonment is that the property reverts to the debtors nunc pro tunc to the date the debtors filed their bankruptcy petition as though the debtors held title to the property continuously and as if no bankruptcy had been filed."

12

nunc pro tunc effect of abandonment is subject to a balancing of the equities"]; *In re Pena* (B.A.P. 9th Cir. 2019) 600 B.R. 415, 422–423, fn. 11 [declining to apply general rule of "retroactive application of abandonment" where "equities" did not support its application].)[10] We take from our review of these various authorities three general principles regarding the effect of abandonment of bankruptcy estate property. First, a trustee's abandonment of estate property under the Bankruptcy Code generally *returns* title to, and possession and control of, the abandoned property *back* to the debtor to the same extent that the property had been held by the debtor prior to the filing of the bankruptcy as of the date the abandonment is effectuated. Second, it follows from the first that a trustee's abandonment of bankruptcy estate

---

10     See also *Failla v. CitiBank, N.A.* (S.D.Fla. 2015) 542 B.R. 606, 612 [declining to "take[ ] literally" the "statements from the courts" to the effect that after an abandonment by the trustee, property " 'reverts to the debtor and stands as if no bankruptcy petition was filed' " where "[t]o hold otherwise would permit the debtor to use the 'fiction . . . invented by courts to . . . be blindly followed to a result that is unjust' "]; *Kunkel v. Jasin* (3d Cir. 2011) 420 Fed.Appx. 198, 200 [affirming district court's decision not to apply "the doctrine of 'relation back' " of abandonment where doing so would permit debtor to benefit from his filing of invalid copyright registrations]; *U.S. v. Grant* (1st Cir. 1992) 971 F.2d 799, 804 ["[T]he ['relation back'] doctrine originated within the very dissimilar framework of the Bankruptcy Act, and its application . . . to these chapter 7 proceedings under the Bankruptcy Code would serve none of the benign purposes for which it was fashioned. Rather, its extension [in this case] would disserve the interests of justice which the 'relation back' doctrine was designed to serve."]; *Barletta v. Tedeschi* (N.D. N.Y. 1990) 121 B.R. 669, 674 [The "rule of [retroactive] reversion is a legal fiction invented by the courts to aid them in achieving a just result"]; *In re Ira Haupt & Co.* (2d Cir. 1968) 398 F.2d 607, 613 ["fiction" that abandonment of property renders it " 'as though the trustee had never owned or claimed it' " should not prevent a court "from reaching the fairest solution"]; *Rosenblum v. Dingfelder* (2d Cir. 1940) 111 F.2d 406, 409 ["Relation back may be considered in the nature of a fiction" to be applied where it "fits" a case "appropriately."].

13

property operates to relieve the trustee of further responsibility for and interest in the property as of the date the abandonment is effectuated. Third, however, a court may rely on the "fiction" that title to property abandoned by a trustee remained with the debtor as if the bankruptcy petition had never been filed in situations in which equity requires the application of the nunc pro tunc fiction.

Further, Gladstone has not cited, nor have we independently identified, any authority in which a court at the pleading stage has applied the equitable principal of retroactive application of a trustee's abandonment to relieve a trustee of liability for injuries caused by a dangerous condition of estate property that occurred prior to the effectuation of an abandonment. In fact, there is only one case on which Gladstone relies that specifically involves the interplay between a trustee's potential liability for an accident that occurred on bankruptcy estate property and the trustee's abandonment of that property. And that decision demonstrates, contrary to Gladstone's argument and the trial court's ruling, that under the facts as alleged here and those determinable from judicially noticeable documents, Gladstone *cannot* be deemed free from liability as a matter of law as a result of her post-accident abandonment of the property.

In *Southern International, supra,* 165 B.R. 815 at page 819, the court determined that the *date of abandonment* is the point at which a trustee's responsibility for accidents that occur on bankruptcy estate property terminates. In that case, the court considered a bankruptcy trustee's motion for summary judgment in connection with counterclaims asserted against the trustee regarding the July 1991 contamination of the debtor company's land, as well as surrounding properties, caused by the overflow of tanks that contained a toxic solution. (*Id*. at pp. 817–818.) Walker, an adjacent

14

landowner asserting the counterclaims, accused the trustee "of negligence in allowing the spills to occur and also ask[ed] that [the trustee] be held strictly liable for the contamination." (*Id*. at p. 818.)

The trustee maintained that he had abandoned the property on which the tanks were housed and further argued that his abandonment of the property relieved him of liability in connection with the counterclaims, thereby entitling him to summary judgment. (*Southern International, supra*, 165 B.R. at pp. 817–818.) The *Southern International* court discussed the general rule as to how bankruptcy estate property is treated after it is abandoned by a bankruptcy trustee, and related the effect of abandonment to claims against a trustee for damage-producing incidents that occur on the property:

> "It is a well established rule that once a trustee abandons estate property it is no longer part of the estate and is effectively beyond the reach and control of the trustee. See *In re Sutton*, 10 B.R. 737, 739 (Bankr. E.D.Va. 1981). Consequently, in most instances the trustee may not be held responsible *for any post-abandonment accidents* involving the property. *Upon abandonment*, the property reverts back to the party with the possessory interest and also divests this Court of jurisdiction over the property. See [*Wilson, supra,* 94 B.R. at p. 888] and *In re Reed*, 94 B.R. 48, 52 (Bankr. E.D.Pa. 1988). Thus, any claim for damage done to the property *subsequent to the abandonment* has no bearing on the administration of the debtor's Chapter 7 case and must be dismissed. See *Id*." (*Southern International*, at p. 819, italics added.)

The court then examined three issues related to the trustee's asserted abandonment: (1) whether the trustee's notice of possible abandonment through a notice of the meeting of creditors under title 11 of the United States Code, section 341 (the section 341 meeting) was sufficient notice of the proposed abandonment of estate property to permit the trustee to effectuate

15

an actual abandonment at that meeting; (2) whether the trustee's postabandonment conduct operated to "revoke a previously valid abandonment"; and (3) whether the trustee even "had a right to abandon the facility while its machinery still contained the [toxic] solution." (*Southern International, supra,* 165 B.R. at pp. 820–823.)

The main dispute regarding the validity of the trustee's notice of the proposed abandonment was whether an April 30, 1991[11] notice provided by the trustee regarding the section 341 meeting—a notice that included the trustee's indication that he might abandon certain property at the meeting and a statement indicating that objections to such abandonment would have to be filed pursuant to local rules—was sufficient to permit the trustee to effectuate the abandonment of the property at the section 341 meeting. (*Southern International, supra,* 165 B.R. at pp. 820–821.) The court determined that it was, rendering effective the trustee's abandonment of the property at the May 30, 1991 creditors meeting. (*Id.* at p. 821.)[12] Because the *Southern International* court determined that Walker had admitted the trustee "did actually abandon the property" at the creditors meeting (*Southern International,* at p. 820, fn. 1), and because the notice about that

---

[11] The *Southern International* opinion cites the date of the notice of the meeting as "April 30, 1993," but "1993" appears to be an editorial mistake, as the meeting for which the notice was given took place in 1991. (165 B.R. at p. 818.)

[12] The *Southern International* court stated, "Because all proper parties were effectively noticed of the proposed abandonment of estate property through the notice of the meeting of creditors, the trustee did properly notice his intent to abandon the facility at that creditor's meeting. Because no party objected to the proposed abandonment, the trustee is treated as effectively abandoning the facility on May 30, 1991, some forty-nine days before the July 19, 1991 spill." (165 B.R. at p. 821.)

16

meeting had also informed interested parties that the property might be abandoned at the meeting, the abandonment of the property by the trustee at the section 341 meeting was effective as of the date of the meeting—i.e., May 30, 1991. (*Southern International,* at p. 821.) The contamination spill occurred 49 days later on July 19, 1991. (*Ibid*.) After also rejecting the alternative contentions that the trustee had revoked any abandonment through subsequent conduct and that the trustee had no power to abandon the property in the first place, the *Southern International* court concluded:

> "Because the trustee *is held to have abandoned the facility before the spill*, the trustee may not be held responsible for any damages flowing from that or any other accidents at the facility *after the May 30, 1991 creditors' meeting*. Also, because abandonment of the facility divests this Court of any jurisdiction over the facility, any action involving the facility's operations after the abandonment are not properly before this Court. In sum, because the trustee abandoned the facility before the spill, summary judgment should be granted in favor of the trustee on all three of Walker's counts contained in his counterclaim." (*Southern International*, at p. 823.)

Applying these principles, we conclude that at the demurrer stage, judicially noticeable documents demonstrate that the Doughertys' bankruptcy proceeding was converted to a chapter 7 bankruptcy on April 4, 2019, and Gladstone was appointed trustee of the bankruptcy estate at that time in connection with the conversion. Therefore, as of April 4, 2019, title to and possession and control of the Alpine Property was held in trust by Gladstone. On May 21, 2019, the bankruptcy court authorized Gladstone to operate the bankruptcy estate's businesses, which included operating the Alpine Property as a rental business. Gladstone filed a notice of her intent to abandon the Alpine Property on July 19, 2019. The alleged injury occurred on the Alpine Property on July 21, 2019. It was only weeks later, on August

17

16, 2019, that Gladstone effectuated the abandonment of the property, which was after the time for objections had elapsed and was the date that Gladstone filed with the bankruptcy court her "Report of Abandonment of Property." These facts demonstrate that title to and possession and control over the Alpine Property did not terminate as to Gladstone and revert to the Doughertys until August 16, 2019.

Gladstone suggests that in *Southern International* "the court concluded the *notice of intent to abandon* the property was the effective date for determining whether the property was under the trustee's control at the time of the incident." We believe this is a misreading of *Southern International*. Rather, as we have previously explained, the date of the notice of the trustee's intent to abandon the property in *Southern International* was the date that the trustee issued its notice of the section 341 meeting of the creditors—i.e., April 30, 1991. (*Southern International*, *supra*, 165 B.R. at p. 818.) But the actual abandonment of the property occurred "[d]uring the duly scheduled [section] 341(a) meeting," after the trustee verified that there had been no timely-filed objections to the proposed abandonment. (*Southern International,* at p. 818.) Thus, *Southern International* does not support Gladstone's contention that she is relieved of any responsibility for the Alpine Property as of the date she filed a notice of her intention to abandon the property, and certainly not as of the even earlier date when the bankruptcy petition was filed. *Southern International* instead indicates that a trustee's responsibility for accidents that occur on estate property terminates only when the abandonment is effectuated.

Our application of the principles related to abandonment of bankruptcy estate property, which is consistent with *Southern International*, serves to promote California policy of requiring those who exercise control over

18

property to remain diligent in ensuring that such property remains reasonably safe. In California, "[t]he ' "crucial element" ' for imposing a duty . . . [to act reasonably to protect others from a dangerous condition on the property] is control . . . ." (*Soto v. Union Pacific Railroad Co.* (2020) 45 Cal.App.5th 168, 177.) The rationale for this rule is that whoever has the means to control the property also has the ability to take reasonable steps to prevent harm. (*Ibid.*) It follows that a trustee who has actual possession and control of estate property during a certain time period is the party who can take steps to prevent harm from occurring on that property.

In a case where a party is injured on the property during that time period, applying the equitable nunc pro tunc rule to create a legal fiction that the debtor exercised possession and control would undermine the rationale for imposing a duty on the party who had actual control over property and the concomitant ability to maintain it in a safe condition. And in the absence of a compelling reason to depart from the reasoning in *Southern International*, we conclude that it is only upon the trustee's complete relinquishment of control over the property back to the debtor—through the *effectuation* of an abandonment—that a trustee may no longer be held liable for accidents that occur on that property. As a result, Gladstone's abandonment of the Alpine Property on August 16, 2019, weeks *after* the accident, does not provide a basis for the sustaining of Gladstone's demurrer as to Martin's claims for injuries she sustained on July 21, 2019.

B.   *The* Barton *rule does not provide an alternative ground for affirming the trial court's sustaining of the demurrer.*

As an alternative ground for affirming the judgment, Gladstone argues that the demurrer was properly sustained because Martin failed to obtain bankruptcy court approval before filing her claims, as required by the *Barton*

doctrine.[13]  In *Barton, supra*, 104 U.S. 126, a train passenger asserted personal injury claims against a court-appointed receiver of the railroad company that operated her train.  (*Id.* at p. 127.)  The receiver filed a plea to the jurisdiction, arguing among other things that the plaintiff had not obtained leave of the court that appointed the receiver.  (*Ibid.*)  The plaintiff demurred to the plea, and the trial court overruled the demurrer and entered judgment for the receiver.  (*Ibid.*)  On consideration of the plaintiff's writ of error, the United States Supreme Court affirmed the judgment against the plaintiff, explaining that "a court of another State has not jurisdiction, without leave of the court by which the receiver was appointed, to entertain a suit against him for a cause of action arising in the State in which he was appointed and in which the property in his possession is situated, based on his negligence or that of his servants in the performance of their duty in respect of such property."  (*Id.* at p. 137.)

The *Barton* doctrine has more recently been summarized as requiring " 'that a party must first obtain leave of the bankruptcy court before it initiates an action *in another forum* against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity.' "  (*Harris v. Wittman* (*In re Harris*) (9th Cir. 2009) 590 F.3d 730,

---

[13]    Martin suggests that Gladstone's failure to file a "protective cross-appeal from that aspect of the trial court's Order denying her [*Barton*] Doctrine argument" has rendered this issue forfeited.  We disagree.  It is well settled that a defendant may argue, as an alternative basis for affirming the judgment, separate grounds raised on demurrer even if they were not relied on by the trial court.  (See, e.g., *Bichai v. Dignity Health* (2021) 61 Cal.App.5th 869, 877 ["Appellate courts affirm a judgment of dismissal if it is correct on any ground stated in the demurrer, independent of the trial court's stated reasons]; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 ["The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken.' "].)

741.)  In the absence of leave from the court that appointed the trustee, " 'the *other forum* lack[s] subject matter jurisdiction over the suit.' " (*Harris,* at pp. 741–742.)

"Cases since *Barton* . . . have explained that the doctrine exists to ensure the 'uniform application of bankruptcy law' by requiring 'all legal proceedings that affect the administration of the bankruptcy estate be brought *either* in bankruptcy court or with leave of the bankruptcy court.'[ ] [Citation.]  The doctrine also serves to protect receivers and trustees from the burden of 'having to defend against suits by litigants disappointed by his actions on the court's behalf, which would impede their work for the court." (*Akhlaghpour*, *supra*, 86 Cal.App.5th at p. 243, fn. omitted.)  The *Barton* doctrine generally "applies when three conditions are met:  (1) the plaintiff is attempting to 'initiate[ ] an action in another forum'; (2) the action is 'against a bankruptcy trustee or other officer appointed by the bankruptcy court'; and (3) the action is 'for acts done in the officer's official capacity.' " (*Akhlaghpour,* at p. 244.)

Although the *Barton* doctrine is of common law origin, it has been legislatively narrowed by statute, the current version of which is found in the Judicial Code at title 28 United States Code section 959(a).  That provision states:

> "Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, *with respect to any of their acts or transactions in carrying on business connected with such property*.  Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury." (28 U.S.C. § 959(a), italics added.)

21

The court in *In re VistaCare Group, LLC* (3d Cir. 2012) 678 F.3d 218, 225–226 (*VistaCare*) noted that this statutory exception to the *Barton* doctrine appears to have originated out of certain concerns that were raised in the dissent in *Barton*:

> "[Title 28 United States Code section 959(a)], originally enacted in 1887, just six years after *Barton*, seems to have been in direct response to the concerns raised in Justice Miller's dissent in *Barton*. Criticizing the scope of the Court's holding, Justice Miller noted that the role of a receiver had expanded well beyond winding up the affairs of a defunct corporation and liquidating its assets, to in some situations, essentially running the company.[ ] *Barton*, 104 U.S. at 137–[138] (Miller, J., dissenting). Justice Miller opined that it would be fundamentally unfair to require a party to obtain court permission to pursue claims against the receiver arising out of the receiver's operation of the business. *Id*. at 138. Such a system would render the everyday operations of the corporation "exempt[ ] from the operation of common law" and deprive potential litigants of the right "to have their complaints tried by [a] jury or by the ordinary courts of justice." *Id*. Rather, a party's only remedy against the corporation would be in 'the hands of . . . the court which appointed [the receiver].' *Id*. In contrast, Justice Miller agreed with the majority that '[w]hen a receiver [was] appointed to wind up a defunct corporation . . . [and] his sole duty [was] to convert the property into a fund for the payment of debts, . . . a very strong reason exist[ed] why the court which appointed him should alone control him in the performance of his duty.' *Id*." (*VistaCare, supra*, 678 F.3d at p. 226, fn. omitted.)

The *VistaCare* court found it "abundantly clear that Congress intended to narrow the scope of the *Barton* doctrine by creating an exception for situations in which the policy rationales underlying the Court's creation of the doctrine were not applicable." (*VistaCare, supra*, 678 F.3d at p. 227.) So "where a trustee or receiver *is actually operating the business*, a*nd the acts*

22

*complained of involved the trustee's 'conducting the debtor's business in the ordinary sense of the words or [his] pursuing that business as an operating enterprise,'* an aggrieved party need not seek permission from the appointing court before filing suit in another forum." (*Ibid.*, italics added, quoting *Beck v. Fort James Corp.* (*In re Crown Vantage, Inc.*) (9th Cir. 2005) 421 F.3d 963, 971–972 (*Crown Vantage*).)  On the other hand, in a situation in which a trustee " 'acting in his official capacity conducts no business connected with the property other than to perform administrative tasks necessarily incident to the consolidation, preservation, and liquidation of assets in the debtor's estate,' [title 28 United States Code section] 959(a) does not apply, and leave of court is still required before filing suit against the trustee." (*VistaCare*, at p. 227, quoting *Lebovits v. Scheffel* (*In re Lehal Realty Assocs.*) (2d Cir. 1996) 101 F.3d 272, 276 (*Lehal*).)

Courts have determined that the exception to the *Barton* rule in title 28 United States Code section 959(a) did not apply in various situations in which the trustee was being sued in connection with activities related to the winding up of a bankruptcy estate, because " '[m]erely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted.' " (*Carter v. Rodgers* (11th Cir. 2000) 220 F.3d 1249, 1254 (*Carter*).)  For example, where the trustee was sued in connection with the selling of lots on a particular estate property, but the debtor was "not in the business of buying and selling real estate," the selling of the lots was a matter of "performing [the] duty as trustee to liquidate the assets of the estate." (*VistaCare, supra,* 678 F.3d at p. 227, fn. 5.)  Similarly in *Carter,* a plaintiff-debtor's action against a former bankruptcy trustee for breach of fiduciary duty was "not premised on an act or transaction of a

23

fiduciary in carrying out [the plaintiff-debtor's] business operations," but was instead related to "the administration and liquidation of [the debtor's] estate," rendering title 28 United States Code section 959(a)'s exception inapplicable. (*Carter,* at p. 1254.) Or, where a trustee was being sued for his conduct related to "liquidating the assets of the estate" in connection with his handling of legal claims, the *Barton* doctrine applied and its statutory exception did not. (*Crown Vantage, supra,* 421 F.3d at pp. 971–972; see also *Allard v. Weitzman* (*In re DeLorean Motor Co.*) (6th Cir. 1993) 991 F.2d 1236, 1241 ["Trustee's fraudulent conveyance suit against DeLorean and Weitzman *was in no way related to carrying on* [*the debtor's*] *business.*" (Italics added.)]; *Lehal, supra,* 101 F.3d at p. 276 ["[Section] 959 does not apply where, as here, a trustee acting in his official capacity conducts no business connected with the property other than to perform administrative tasks necessarily incident to the consolidation, preservation, and liquidation of assets in the debtor's estate."].)

Thus, where the conduct being challenged in a lawsuit involves a trustee acting in a manner consistent with liquidating the assets of the bankruptcy estate and doing nothing more, the *Barton* doctrine applies to require leave of the bankruptcy court before filing suit. (*Crown Vantage, supra,* 421 F.3d at p. 972.) In contrast, however, *the exception* to the *Barton* doctrine provided for in title 28 United States Code section 959(a) applies to situations in which a plaintiff is suing the trustee for conduct in "operating the business previously conducted by the debtor." (*Crown Vantage,* at p. 972.) This "carrying on business" exception is intended to "permit actions redressing torts committed in furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example, conducted a retail store." (*Lehal, supra,*

24

101 F.3d at p. 276.)  Carrying on business "only cover[s] 'acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise.' " (*Seaman Paper Co. of Mass., Inc. v. Polsky* (D. Mass. 2007) 537 F.Supp.2d. 233, 238.)

For example, the United States Supreme Court approved the bringing of a state lawsuit against a bankruptcy trustee for "a money claim against the estate for acts of the trustee in operating trains over respondent's tracks," despite the failure to seek leave of the bankruptcy court.  (*Thompson v. Texas M. R. Co.* (1946) 328 U.S. 134, 138 (*Thompson*).)  The *Thompson* court explained that "[o]peration of the trains is plainly a part of the trustee's functions.  Claims which arise from their operation—whether grade-crossing claims as in [*McNulta v. Lochridge* (1891) 141 U.S. 327, 332], or claims for the use of the tracks of another as in the present case—*are claims based on acts of the trustee in conducting the business* [of the debtor]." (*Thompson*, at p. 138, italics added.)  And in *McNulta*, the case relied on by the *Thompson* court, the United States Supreme Court similarly permitted a plaintiff to maintain a state lawsuit for wrongful death alleged in connection with the "negligent management of an engine at a public crossing" against a receiver without the plaintiff having first sought leave of the court that had appointed the receiver.  (*McNulta*, at pp. 327, 331.)

Similarly, in *Valdes v. Feliciano* (1st Cir. 1959) 267 F.2d 91, the court relied on the statutory exception to the *Barton* rule to conclude that the plaintiffs could pursue state law claims arising out of "a grade-crossing accident" that was alleged to have been "caused by negligence of the debtor railroad in the operation of a locomotive" after the bankruptcy petition had been filed.  (*Valdes,* at pp. 93, 94–95.)  The *Valdes* court relied on *Thompson* to acknowledge that the " 'operation of the trains is plainly a part of the

25

trustee's functions' " and therefore concluded that the plaintiffs "were entitled to proceed with their tort actions." (*Valdes*, at pp. 94–95.)

More recently, in a case quite similar to the one before us, the statutory exception set out in title 28 United States Code section 959(a) was applied to permit a tort action to proceed in the face of a motion to dismiss filed by a trustee who had been maintaining a residential apartment as part of the estate's property at the time a tenant was injured at the apartment. (*Dell v. Chain (In re Chain)* (W.D.Pa. 2020) 614 B.R. 512, 517 (*Chain*).) In *Chain*, a trustee was appointed to administer the bankruptcy estate on September 15, 2015. At a meeting of the creditors that took place approximately a month later, the secured creditor of the building in which the apartment was located and the trustee "agreed that [the trustee] would manage the ongoing operations of the building until it and other property could be sold and distributed." (*Ibid.*) The trustee "continued to manage the property in an effort to liquidate it for the benefit of the creditors," and the property was eventually sold on November 10, 2016. (*Ibid.*) According to the complaint, in late March 2016 (i.e., at a time during which the trustee was managing the property while preparing to sell it), a walking cane belonging to one of the tenants "broke through a wooden step that had been decaying for some time," causing the man to lose his balance, fall down the stairs, and sustain serious injuries. (*Ibid.*)

The trustee moved to dismiss the complaint, arguing that the district court lacked subject matter jurisdiction "because the [*Barton*] doctrine prohibits a trustee from being sued for administrative acts without leave from the bankruptcy court, which plaintiffs did not obtain." (*Chain*, *supra*, 614 B.R. at p. 518.) The *Chain* court rejected this argument, stating that "it has become clear that the exception to the [*Barton*] doctrine is meant to

26

apply in precisely the type of case alleged here." (*Chain,* at p. 519.) The court explained, "Here, plaintiffs assert that defendant [trustee] was negligent in maintaining the premises for the operation of the rental business" and "specifically aver that while [the defendant] was acting as the trustee, he leased, operated, owned, possessed, controlled, managed and maintained the premises where the accident occurred." (*Ibid*.) According to the *Chain* court, the "alleged activities extend beyond the mere administration of property, or tasks incident to consolidating, preserving or liquidating the assets," in that "[t]hey raise a sufficient inference that [the defendant] carried on an ongoing rental business connected with the premises . . . ." (*Ibid*.)

A review of the above-referenced authorities makes clear that we must determine whether the allegations of the Complaint and the facts that may be ascertained from the judicially noticed documents filed in the bankruptcy court demonstrate, as a matter of law, that Gladstone was " '[m]erely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate,' " which would require application of the *Barton* doctrine. (*Carter*, supra, 220 F.3d at p. 1254.) We cannot so conclude at this stage of the proceedings. Similar to the allegations at issue in *Chain, supra*, 614 B.R. at page 519, the Complaint here includes allegations that Gladstone, "owned, leased, occupied, maintained, or controlled" the Property during the relevant time period.[14] In addition, the documents filed in the bankruptcy court demonstrate that Gladstone specifically sought and obtained from that court the "authority to

---

14     In *Chain*, the complaint alleged that the trustee "leased, operated, owned, possessed, controlled, managed and maintained the premises where the accident occurred." (*Chain, supra*, 614 B.R. at p. 519.)

operate to maintain the Properties pending sale," including the Alpine Property, which Gladstone identified as being "leased to tenants." She framed her request as seeking authorization "*to operate the businesses of Debtors*, accept lease payments, and pay expenses that arise in the ordinary course of the business," and the court granted her request without limitation. (Italics added.) Further, Gladstone submitted financial reports that indicated she was operating the Alpine Property as a rental.

As a result, the allegations of the Complaint and the judicially noticed bankruptcy court documents are sufficient to support an inference that Gladstone's alleged activities in connection with the Alpine Property, like the activities of the trustee in *Chain*, *supra*, 614 B.R. at page 519, "extend[ed] beyond the mere administration of property, or tasks incident to consolidating, preserving or liquidating the assets." These allegations and judicially noticed facts appear to support a conclusion that Gladstone was maintaining, controlling, and, most importantly, acting as a landlord in continuing to lease the Alpine Property as a rental unit, and that in doing so she was "carr[ying] on an ongoing rental business connected with the premises" (*Chain*, *supra*, 614 B.R. at p. 519) at the time Martin is alleged to have suffered an injury. Such a conclusion would render the title 28 United States Code section 959(a) exception to the *Barton* doctrine applicable here.

Accordingly, we conclude that the *Barton* doctrine does not provide an alternative basis for affirming the trial court's sustaining of Gladstone's demurrer to the Complaint.

## DISPOSITION

The judgment is reversed.  Martin is entitled to costs on appeal.


DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DO, J.